## KAUFFMAN v. ALTORFER.

### Patent Appeal No. 4781.

Court of Customs and Patent Appeals.

March 6, 1944.

Hugh C. Lord, of Erie (Charles R. Riordon, of Washington, D. C., of counsel), for appellant.

Joseph H. Milans, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined in the eight counts in issue (Nos. 1 to 8, inclusive) to appellee, Alpheus W. Altorfer.

The interference is between appellant's reissue application, No. 228,713, filed September 6, 1938, for the reissue of his patent, No. 2,087,977, issued July 27, 1937, on an application filed May 11, 1933, and appellee's application, No. 641,847, filed November 9, 1932.

Counts 1 and 2 are illustrative of the counts in issue. They read:

"1. In a wringer, a main frame, a roller journalled therein, a second frame adapted to cooperate with the main frame, supporting members carried by said second frame, journals carried by said supporting members and movable relative thereto, a second roller mounted in said journal and resilient means urging said journals away from said second frame, means for releasably locking the second frame in position on the main frame and safety release mechanism including a push or pull rod mounted upon said second frame and passing through opposite portions thereof.

"2. In a wringer, a main frame, a roller journalled therein, a second frame adapted to cooperate with the main frame, supporting members carried by said second frame, journals carried by said supporting members and movable relative thereto, a second roller mounted in said journals and resilient means urging said journals away from said second frame, means for releasably locking the second frame in position on the main frame and safety release mechanism including a push or pull rod disposed transversely of the upper frame."

The invention relates to improvements in clothes wringers for use on washing machines, and particularly to safety release mechanism for relieving the pressure on the rolls.

Appellant is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

The safety release mechanism, as set forth in count 1, includes "a push or pull rod mounted upon said second frame and passing through opposite portions thereof," and, as set forth in count 2, includes "a push or pull rod disposed transversely of the upper frame."

Counsel for appellant, who represented the appellant Kauffman in the case of Kauffman II v. Etten and Hoke, 97 F.2d 134, 25 C.C.P.A., Patents, 1127, quotes in his brief from our decision in that case as to the purpose and function of release mechanism generally similar in purpose and function to the mechanism here involved as follows:

" * * * The function of such subject matter is described broadly in the brief on behalf of the party Kauffman, as follows:

"'Clothes wringers are now commonly used in connection with power washing machines and the wringers are also power driven. With the introduction of the power wringers the danger from injury to the operator by the indrawing of a hand, hair or clothes of the operator between the rolls became a matter of immediate concern and very many devices have been invented to avoid such injury or to minimize injury by providing safety releases through which the pressure on the rolls may be instantly relieved. *The problem involved is not merely one of providing a mechanical device that will accomplish the release of pressure but involves also a means of effecting such release that is practically instantaneous in its action, that is sensitive to the touch of the operator, and one that may be actuated with certainty by the operator under panic conditions.'*" (Italics not quoted.)

Counsel states in his brief that, although the issue here involved differs from that in the Kauffman case, supra, the Kauffman record in that case was made a part of the record in the instant case by stipulation. Additional evidence was introduced by appellant to which we will hereinafter more particularly refer.

In the instant case, appellant relies upon the same physical exhibit (exhibit E) for conception and reduction to practice which he relied upon in the Kauffman case, supra. In that case, however, it was held that the counts there involved did not read upon exhibit E, and that, therefore, the exhibit would not be considered "upon the questions of conception and reduction to practice."

Appellant's wringer (exhibit E) is illustrated by his exhibit C which is a "pencil drawing" and which, according to the testimony of appellant, was apparently made to aid in the description of exhibit E during the preparation of appellant's case in Kauffman, II, v. Etten and Hoke, supra.

In its decision, the Board of Interference Examiners stated that appellant "must rely upon the making and testing of his exhibit E in order to establish his case on priority. This is the only wringer supporting the counts in issue made and tested prior to the Altofer [Altorfer] filing date. The record establishes that exhibit 'E' was made and tested by November 15, 1930. The device was substantially as illustrated in Kauffman exhibit 'C'."

The board held that after the testing of exhibit E "many wringer structures were made and tested," which "were in the main departures from the design of exhibit E." The board further stated that the reason for making other wringer structures and testing them was because exhibit E was not satisfactory, and held that—

"After the production of exhibit 'E' Kauffman made other designs in order to obtain the desired results. This strongly suggests failure of the original device and indicates that it was nothing more than an abandoned experiment. The mere fact that at a later date work on the exhibit 'E' types of machine was resumed does not prove its success. On the contrary it appears to be further evidence of original failure."

In support of that holding, the board cited the cases of Grus v. Eynon, 1920 C.D. 49; Stewart v. Robinson, 55 F.2d 998, 19 C.C.P.A., Patents, 953, 1932 C.D. 245. The board also held that, although appellant was entitled to November 15, 1930 (the date of the construction of his device, exhibit E), for conception of the involved invention, he had failed to prove a successful reduction to practice prior to the filing date of appellee's application—November 9, 1932.

The board considered the evidence introduced by appellee and held that appellee's exhibit No. 7 was constructed and successfully tested in November 1929; that, although that exhibit did not conform to counts 1 and 3, which require that the push or pull rod pass through opposite portions of the upper frame of the wringer, it conformed to all of the other counts in issue; that appellee's exhibits Nos. 12 and 16, which were completed and successfully tested "by March 22, 1932 and June, 1932, respectively," conformed to all of the involved counts; that appellee was the first to conceive and the first to reduce to practice the subject matter of all the counts, except counts 1 and 3; that, although, appellant was the first to conceive the invention defined by counts 1 and 3 by the construction of his device (exhibit E), he was not diligent in reducing the invention defined by those counts to practice, "for," as stated by the board, "he did not resume work on the type of device shown in his exhibit 'E' until December, 1932, a date subsequent to Altorfer's dates for actual as well as constructive reduction to practice"; and that, therefore, appellee was entitled to

an award of priority of the invention defined by each of the counts in issue.

It is contended here· by counsel for appellant that the board erred in holding that appellant's device (exhibit E), which was made and tested as early as November 15, 1930, was not successfully reduced to practice, and that the board was influenced almost entirely by the testimony in rebuttal of appellant's witness George J. Toland, which testimony the board misinterpreted. It is argued by counsel that the testimony relied upon by the board as referring to appellant's exhibit E had reference to an entirely different structure—a wringer, exhibit 28–B, which was apparently developed from exhibit R–A, a drawing dated December 15, 1932, and exhibits R–B–a and R–B–b which are photographs of a wringer apparently constructed sometime early in 1933.

The witness Toland, an employee of appellant's assignee the Lovell Manufacturing Company, in his rebuttal testimony stated on cross-examination that he did not know how many machines of the general type disclosed in the photographs (exhibits R–B–a and R–B–b) were made, but that many were made before satisfactory results were obtained.

The rebuttal testimony of the witness upon which the board apparently relied is as follows:

"XQ. 31. No, I am talking about this one here (referring to a photograph taken from briefcase), Exhibit 'E'. Do you see that bar there? Do you see that going through that little slot there? A. Oh, sure, that is a Z-type. That is what I meant by the plate. There is a plate inside there, and you press this side, and the opposite side comes in, and that releases your latches."

The witness Toland further stated that the device (exhibit E) was one of the first ones made. When asked what particular part of that device needed improvement, he said:

"Why, because it didn't seem to be right to put out to the public. To explain it clearly, well, in other words, if you want production, you have to have an almost fool-proof release. When you call it a release, you have to have a release. When you press a lever to release it, you were supposed to have a release, and the way this was, it wasn't positive. Of course, anyone that has had experience with wringers, or anybody experienced with machines in releasing, they know how it should work, and in that way they would baby the release part in order .to release it. But take a woman that has no machinery ideas or anything of that kind, why, she will be hammering on there and maybe bend the whole thing. There has to be more security."

It is unnecessary that we quote further from that particular line of testimony. Whether the witness understood that the questions propounded to him related to exhibit E or to some other device, we have no way of knowing as he was not interrogated regarding the matter on redirect examination. However, it would seem to be clear that the questions definitely were asked concerning exhibit E. The witness stated that the wringer referred to was a Z-type, and it appears from the record introduced in this case by stipulation that the witness testified that exhibit E was a Z-type wringer, although the record also discloses that a wringer of the Z-type (as shown in the drawing, exhibit B, which apparently was made during the preparation of appellant's case in the case of Kauffman II v. Etten and Hoke, supra, to aid in the description of that wringer) was made, tested, and found to be unsatisfactory prior to the making of exhibit E.

The testimony of the witness Toland indicates quite clearly that appellant had not produced an entirely satisfactory device conforming to the counts in issue prior to the early part of 1933.

Counsel for appellant argues that the testimony of appellant Kauffman and that of the witnesses Toland, Ernest J. Schuda, and Earl V. Godfrey, which was submitted in the case of Kauffman II v. Etten and Hoke, supra, and which was made a part of the record in the instant case by stipulation, establishes that the wringer (exhibit E) was successfully reduced to practice on or about November 15, 1930.

Appellant Kauffman testified that immediately after the construction of exhibit E on November 15, 1930—

"It was put on a washing machine and thoroughly tested by wringing clothes through it as well as test boards and being repeatedly ·released and reassembled under operating conditions. It was also tested and examined and criticized by a number

of other men in the Lovell organization and the management.

\*     \*     \*     \*     \*

"A thorough discussion of the possibilities and short-comings of the device followed with a general condemnation because of the projection of the bars 5 [which extend partially across and on opposite sides of the upper part of the frame] into position where they would be apt to catch the clothes of the operator or would be inadvertently bumped against by an operator causing unwanted release."

Appellant Kauffman, whose testimony was taken in January 1935, further testified that exhibit E "was given concentrated attention for a week or two and has been a subject of consideration and more or less testing ever since" ; that exhibit E is the identical wringer that was made in 1930, except that "the rolls have been replaced"; that, since November 1930, the wringer had been "On a shelf in the experimental room of the Lovell Mfg. Co."; that the device as shown in exhibit B, hereinbefore referred to and which was made prior to the making of exhibit E, "was considered not sufficiently sensitive when struck at that part of the bars nearest the center of the wringer," and that for that reason exhibit E was made.

Although it is clear from the evidence submitted by appellant that the device as shown in the drawing (exhibit B) was not satisfactory, nevertheless, appellant testified that that device and exhibit E were both tested "successfully, not once but many times." Appellant also testified that exhibit E was the only wringer "of that sort that was ever built."

It appears from the record that various devices were made subsequent to the testing of exhibit E, which were unsatisfactory.

The witness Toland testified regarding the testing of exhibit E as follows:

"Q. 46. After you made the wringer, what did you do with it? A. Taking it from my bench, bolted it on a washing machine, ran clothes and also wood to test the release to see what really would happen, but as we found, it worked as we would like to have it and as the different men in the shop, meaning Lovell Mfg. Co., have examined the working part of this mechanism, they have found that it would release under pressure and also with clothes or wood in between the rolls."

Appellant's witness Ernest J. Schuda, a master mechanic in the employ of the Lovell Manufacturing Company, testified that the device as illustrated by exhibit B was not satisfactory, and that exhibit E was made about the middle of November 1930. We quote from his testimony with regard to the testing of exhibit E as follows:

"Q. 53. After Exhibit 'E' was made, what was done with it? A. It was put on a washing machine, tested by wringing boards, clothes and an old blanket and quilt we had around there; it was tested out thoroughly.

"Q. 54. How did it work? A. It worked all right except for the same objection of having anything sticking out from the side of the top."

Appellant's witness Earl V. Godfrey, general superintendent of the Lovell Manufacturing Company, testified that exhibit E "operated very nicely," except for "the 'E' bar there, we had to shorten the handle to allow the bar to pass by the end of it."

It clearly appears from the testimony of appellant and his witnesses that exhibit E was tested, and that the release mechanism operated to relieve the pressure on the rolls. However, that testimony does not establish that by constructing the wringer (exhibit E) appellant solved the problem confronting him, which, as clearly appears from the evidence of record and which counsel for appellant emphasized in his brief by the hereinbefore quoted excerpt from our decision in the Kauffman case, supra, was "not merely one of providing a mechanical device that will accomplish the release of pressure but involves also a means of effecting such release that is practically instantaneous in its action, that is sensitive to the touch of the operator, and one that may be actuated with certainty by the operator under panic conditions."

As will be recalled, appellant Kauffman testified that exhibit E was the only wringer "of that sort that was ever built." Furthermore, it appears from the record that on July 11, 1932, a year and eight months after the making and testing of exhibit E, appellant Kauffman filed an application for patent, No. 621,921, which matured into patent No. 2,216,197 on October 1, 1940, for improvements in safety release devices for wringers, which did not disclose the involved invention.

After careful consideration of the record, we are of opinion, as was the Board

of Interference Examiners, that appellant has failed to establish that he successfully reduced the involved invention to practice by the construction and operation of exhibit E.

Although, in his reasons of appeal, counsel for appellant contends that the board erred in holding that appellant was not diligent in reducing to practice the invention defined by counts 1 and 3, that question is not argued in the brief of counsel. However, we have carefully examined the record and are unable to hold that appellant reduced the invention to practice at any time prior to the filing of appellee's application (November 9, 1932), or that he was diligent in reducing the invention to practice at or immediately prior to that date. It is unnecessary, therefore, that we consider other arguments presented here by counsel for the parties.

For the reasons stated, we are of opinion that the Board of Interference Examiners reached the right conclusion. Accordingly, its decision is affirmed.

Affirmed.